IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| First National Insurance Company of America, | ) Civil Action No. 3:25-cv-13891-SAL )  ) |
| Plaintiff, | ) ) |
|  | ) **Complaint** |
| vs. | ) **(Declaratory Judgment)** ) |
|  | ) |
| John W. Byrd, Forrest S. Byrd and Clara A. Byrd, | ) ) ) |
| Defendants. | ) ) |

The Plaintiff, First National Insurance Company of America ("First National"), hereby states the following as its Complaint for Declaratory Judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, and S.C. Code Ann. § 15-53-10, et seq.

## NATURE OF THE CASE

1. This action seeks a declaratory judgment that First National has no obligation to provide any Underinsured Motorists coverage ("UIM") benefits to John W. Byrd ("J. Byrd"), Forrest S. Byrd ("F. Byrd") or Clara A. Byrd ("C. Byrd") (collectively the "Byrds" or "Defendants") under an Automobile Policy issued by First National to J. Byrd with regard to an accident the Byrds were involved in on July 27, 2022 involving an alleged underinsured motorist.

## PARTIES

2. First National is a company organized under the laws of the State of New Hampshire and for the purposes of federal court jurisdiction/diversity of citizenship, its principal place of business is 175 Berkeley Street, Boston, Massachusetts.

1

3. J. Byrd is a citizen and resident of Lexington County, South Carolina.

4. F. Byrd is a citizen and resident of Newberry County, South Carolina.

5. C. Byrd is a citizen and resident of Newberry County, South Carolina.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

7. This Court has personal jurisdiction over the Byrds. The insurance policy in dispute was issued to J. Byrd at his home address in Lexington County, South Carolina.

8. Venue in this district is proper under 28 U.S.C. §§ 121(2) and 1391(b)(2) and because a substantial part of the events giving rise to this dispute occurred in this district.

## ALLEGATIONS

### The Accident

9. On July 27, 2022, J. Byrd was operating his 2013 Dodge Ram Truck on Highway 3235 in Lafourche Parish, Louisianna. F. Byrd and C. Byrd were passengers in J. Byrd's vehicle. James R. Duck ("Duck") was operating a 2008 Peterbilt Truck and collided with the vehicle carrying the Byrds ("the Accident"). At the time of the Accident, Duck was employed by Dean Blanchard Seafood, Inc. ("Dean Blanchard") and the 2008 Peterbilt Truck was owned by Dean Blanchard and insured with Progressive Paloverde Insurance Company ("Progressive").

### The Underlying Lawsuit

10. On July 21, 2023, the Byrds filed a lawsuit against Progressive, Dean Blanchard and Duck in Louisiana State Court for damages the Byrds allegedly sustained in the

Accident. On August 23, 2023, Progressive removed this lawsuit to the United States District Court for the Easter District of Louisiana (Civ No. 2:23-cv-04009) (the "Underlying Lawsuit").

11. On November 8, 2023, the Byrds filed an Amended Complaint in the Underlying Lawsuit, which was the last operative Complaint in that action. A copy of the Amended Complaint in the Underlying Lawsuit is attached as **Exhibit B**.

12. Neither the original Complaint (styled as a Petition for Damages) nor the Amended Complaint in the Underlying Lawsuit were ever served on First National in the manner provided by law.

13. On October 28, 2025, J. Byrd entered into a full and final settlement of the Underlying Lawsuit whereby he completely and forever released and discharged Dean Blanchard, Duck and Progressive from any claims related to the Accident (the "J. Byrd Release"). A copy of the J Byrd Release is attached as **Exhibit C**. The J. Byrd Release did not reserve J. Byrd's right to obtain a judgment against Dean Blanchard, Duck and/or Progressive, nor did it contemplate that J. Byrd would continue to pursue litigation against the Defendants in the Underlying Lawsuit for the purposes of pursuing a UIM claim. Rather, the J. Byrd Release expressly provides that it is a "full and final release" of the Defendants that includes a dismissal of the Underlying Lawsuit "with prejudice." (**Exhibit C** at p. 3).

14. On October 28, 2025, F. Byrd entered into a full and final settlement of the Underlying Lawsuit whereby he completely and forever released and discharged Dean Blanchard, Duck and Progressive from any claims related to the Accident (the "F. Byrd Release"). A copy of the F. Byrd Release is attached as **Exhibit D**. The F. Byrd Release did not reserve F. Byrd's right to obtain a judgment against Dean Blanchard, Duck and/or Progressive, nor did it contemplate that F. Byrd would continue to pursue litigation against the Defendants in the Underlying Lawsuit for

the purposes of pursuing a UIM claim. Rather, the F. Byrd Release expressly provides that it is a "full and final release" of the Defendants that includes a dismissal of the Underlying Lawsuit "with prejudice." (**Exhibit D** at p. 3).

15. On October 28, 2025, C. Byrd entered into a full and final settlement of the Underlying Lawsuit whereby she completely and forever released and discharged Dean Blanchard, Duck and Progressive from any claims related to the Accident (the "C. Byrd Release"). A copy of the C. Byrd Release is attached as **Exhibit E**. The C. Byrd Release did not reserve C. Byrd's right to obtain a judgment against Dean Blanchard, Duck and/or Progressive, nor did it contemplate that C. Byrd would continue to pursue litigation against the Defendants in the Underlying Lawsuit for the purposes of pursuing a UIM claim. Rather, the C. Byrd Release expressly provides that it is a "full and final release" of the Defendants that includes a dismissal of the Underlying Lawsuit "with prejudice." (**Exhibit E** at p. 3).

16. In accordance with the full and final releases they granted to the Defendants in the Underlying Lawsuit, on October 31, 2025, the Burds moved to dismiss the Underlying Lawsuit with prejudice. A Copy of the Byrds' Motion to Dismiss with Prejudice is attached as **Exhibit F**. On November 3, 2025, an Order dismissing the Underlying Lawsuit with prejudice was entered. A copy of this Order is attached as **Exhibit G**.

17. None of the Byrds ever obtained a judgment against any of the Defendants in the Underlying Lawsuit that established either liability for the Accident or the amount of the Byrds' damages.

18. Due to the operation of the applicable statute of limitations, the dismissal of the Underlying Lawsuit with prejudice, and the releases granted by the Byrds, the Byrds are no longer to assert any claims against Duck or Dean Blanchard related to the Accident, and, therefore,

can never establish either their liability for the accident or any damages that any of the Byrds would be legally entitled to recover from the owner or operator of an underinsured vehicle.

### The Auto Policy

19. First National issued a South Carolina Essential Automobile Policy No. F3371998, covering the policy period of May 2, 2022 to May 2, 2023 ("the Auto Policy"), to J. Byrd at his home address in Lexington County, South Carolina. The South Carolina Auto Policy is attached as **Exhibit A**.

20. The South Carolina Auto Policy insured two vehicles (a 2013 Ram 3500 SLT and a 1993 Nissan Truck), both of which were registered in South Carolina at the time the policy was issued and at the time of the Accident.

21. J. Byrd was a citizen and resident of South Carolina with a South Carolina issued driver's license at the time the South Carolina Auto Policy was issued and at the time of the Accident.

22. The South Carolina Auto Policy included UIM Coverage which provided that First National will pay certain damages which an insured is legally entitled to recover from the owner or operator of an underinsured vehicle.

23. The South Carolina Auro Policy's UIM coverage section explicitly states that "[t]his coverage is intended to be in full conformity with the South Carolina Insurance Laws."

### The UIM Claim and the Failure to Complaint with South Carolina UIM Law

24. It was not until November of 2025 that the Byrds first asserted UIM claims related to the Accident with First National.

25. J. Byrd has asserted a UIM claim based on the Accident and has demanded payment of what he contends is the full UIM policy limits available to him—$200,000

26. F. Byrd and C Byrd have also asserted UIM claims based on the Accident and have demanded payment of what they contend are the full UIM policy limits available to them—$100,000 each.

27. Significantly, the Byrds' UIM claims were only asserted after the Byrds granted full releases to Duck and Dean Blanchard, and after they had dismissed the Underlying Lawsuit with prejudice—forever foreclosing their ability to establish either the liability of Duck/Dean Blanchard for the Accident or the amount of the Byrds damages from the Accident.

28. South Carolina Code Ann. § 38-77-160, titled "Additional uninsured motorist coverage; underinsured motorist coverage", states:

> Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage in addition to the mandatory coverage prescribed by Section 38-77-150. Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage. Benefits paid pursuant to this section are not subject to subrogation and assignment.
>
> **No action may be brought under the underinsured motorist provision unless copies of the pleadings in the action establishing liability are served in the manner provided by law upon the insurer writing the underinsured motorist provision. The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability and has thirty days after service of process on it in which to appear.** The evidence of service upon the insurer may not be made a part of the record. **In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist insurer may assume control of the defense of action for its own benefit.** No underinsured motorist

policy may contain a clause requiring the insurer's consent to settlement with the at-fault party.

(emphasis added)

29. Section 38-77-160 has been consistently held to protect the UIM carrier's ability to contest and defend the underlying action against the at-fault motorist, and to require that, in order for an insured to retain the ability to make a UIM claim, that insured must preserve his or her ability to pursue the claim against the at-fault motorist. More specifically, once a lawsuit is filed by the insured against the at-fault motorist, the insured is required to formally serve the UIM carrier with the insured's suit against the at-fault motorist and the UIM carrier is afforded the opportunity to fully defend that action if and when the at-fault motorist's carrier settles.

30. The pleadings in the Underlying Lawsuit were never served upon First National in violation of Section 38-77-160.

31. First National was never provided with the opportunity to assume the control of the defense in the Underlying Lawsuit once Progressive decided to settle, in violation of Section 38-77-160.

32. Due to the operation of the applicable statute of limitations, the Byrds' grant of full releases to Duck and Dean Blanchard, and the dismissal with prejudice of the Underlying Lawsuit, the Byrds failed to preserve their ability to pursue the claims against the at-fault motorist, and they are no longer "legally entitled to recover" any amount from the owner or operator of an underinsured vehicle or to establish damages that trigger UIM coverage.

**FOR A FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT**

33. First National incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

34. There is now a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

35. A controversy and dispute exists between First National, on the one hand, and the Byrds, on the other hand, as to whether the Byrds can maintain UIM claims related to the Accident.

36. First National is entitled to a judicial determination that there is no UIM coverage available to the Byrds for the Accident the South Carolina Auto Policy because:

    (a) The Byrds failed to comply with Section 38-77-160's requirement that they serve the pleadings in the Underlying Lawsuit on First National in the manner provided by law;

    (b) First National was denied its statutory right to appear and defend the Underlying Lawsuit;

    (c) The Byrds' failed to preserve their ability to pursue the claims against the at-fault motorist, and they are no longer "legally entitled to recover" any amount from the owner or operator of an underinsured vehicle or to establish damages that trigger UIM coverage because they granted full releases to Duck and Dean Blanchard;

    (d) The Byrds' failed to preserve their ability to pursue the claims against the at-fault motorist, and they are no longer "legally entitled to recover" any amount from the owner or operator of an underinsured vehicle or to establish damages that trigger UIM coverage because the Underlying Lawsuit was dismissed with prejudice; or

    (e) The Byrds' failed to preserve their ability to pursue the claims against the at-fault motorist, and they are no longer "legally entitled to recover" any amount from the owner or operator of an underinsured vehicle or to establish damages that trigger UIM coverage because the applicable statute of limitations now prevents any claims against Duck or Dean Blanchard that arose out of the Accident.

WHEREFORE, First National prays that the Court inquire into this matter and Order the following relief:

    a. Grant Declaratory Judgment that there is no UIM coverage available to the Byrds under the South Carolina Auto Policy; and

    b. Any such other and further relief as equity may require and the Court deems just and proper.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/Brian P. Crotty*
Brian P. Crotty
Federal Bar No. 7445
E-Mail: brian.crotty@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

*Attorneys for First National Insurance Company of America*

Columbia, South Carolina

December 16, 2025

9